STATE of Missouri, Respondent,

v.

Hubert MAYFIELD, Appellant.

No. 26518.

Missouri Court of Appeals,
Kansas City District.

March 3, 1975.

St. Vincent's School, a private school located at 3104 Flora in Kansas City, Missouri, had a cafeteria in the basement of the building. Frozen food was stored in a locker in the basement. On January 13, 1972, Sister Bussanmas, the school principal, had checked the doors and windows before she left the school around 4:00 P.M. and found them secure.

At around 11:45 P.M., January 13, 1972, Officer Connor and another policeman were in an unmarked police car, traveling north on Paseo. They turned east on 31st Street, a short block west of Flora. When they turned east on 31st, Officer Connor saw two Negro men run from the vicinity of St. Vincent's School and cross the street near the intersection of 31st and Flora. Officer Connor's attention was drawn to the men because one of them was dropping boxes as he ran.

The two men ran north along the west side of Flora for about 75 feet and then crossed Flora, running toward an automobile parked at the east curb line, facing north. Officer Connor saw one of the men run up to this auto, open a door and begin throwing packages into the auto. The second man stood behind the first, holding packages.

The officers drove up to the automobile and turned a spotlight toward it. When the light struck him, the man who had reached the car first dropped a hammer and flashlight. The second man also dropped a flashlight. The men started to run, but the officers drew weapons and the men halted eight to ten feet from the car.

The officers found appellant, Hubert Mayfield, seated behind the steering wheel of the automobile. Mayfield told the officers that he didn't know what was going on. He explained his presence by saying that his car had run out of gas. Officer Connor got in the car and started the motor. The gas gauge showed a half tank of gas.

Mayfield told the police that he did not know the other two men. Mayfield said he

Willard B. Bunch, Public Defender, Gary E. Haggerty and Douglas N. Merritt, Asst. Public Defenders, Kansas City, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Sp. JJ.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment and sentence to three years' imprisonment on jury verdict finding Hubert Mayfield guilty of burglary in the second degree.

lived at 2538 Spruce, the same address as that given by one of the other two men.

The officers found frozen pies and a package of bologna or salami in the car. Packages of salami, bologna and hamburger which had been dropped in the street were marked "St. Vincent's School."

Officer Connor went to the school and found boards torn off a window on the south side of the building and the glass broken out of the window. Near the window were double doors, opened by push bars from the inside. The bars had been chained together. One of the bars had been torn off the door and lay on the floor. Near the door was a frozen food locker, containing a few packages of hot dogs. A lock had been broken off the freezer.

The police called "the Reverend who runs the school" and turned the food they had found in the car and in the street over to him. The officers also found several boxes of frozen meat outside a door on the south side of the building. The food was returned to the locker.

The next morning when Sister Bussanmas returned to the school she noticed the broken window and door and observed that the food in the locker had been rearranged, but she was unable to say that any food was missing.

The state's case on Mayfield's trial on a charge of burglary consisted of the testimony of Sister Bussanmas, Officer Connor and another police officer who had been called to the scene and who observed the packages of food at the auto, examined the building and assisted in the return of the food to the locker. No evidence was offered by the defendant. The jury found defendant guilty of burglary in the second degree, but were unable to agree upon the punishment. The trial court fixed the punishment at three years' imprisonment.

Appellant's first contention here is that the evidence is insufficient to support the jury's verdict of guilty. He contends that the evidence shows no more than his "mere presence," which cannot sustain a finding of guilt.

"* * * In determining the sufficiency of the evidence to support the verdict, all of the substantial evidence offered by the State is taken as true, together with all reasonable inferences to be drawn therefrom, and by substantial evidence is meant 'evidence from which the triers of the fact reasonably could find the issue in harmony therewith.' State v. Gregory, 339 Mo. 133, 96 S.W.2d 47, 52; State v. Breeden, Mo. Sup., 180 S.W.2d 684; State v. Miller, Mo.Sup., 202 S.W.2d 887.

"If [appellant] aided and abetted [others] in the burglary, he too was guilty of burglary. State v. Massey, 358 Mo. 1108, 219 S.W.2d 326; 12 C.J.S., Burglary, § 29, p. 688. It was not necessary that [appellant] actually entered the building. State v. Wall, 339 Mo. 111, 96 S.W.2d 36; State v. Peebles, 178 Mo. 475, 77 S.W. 518." State v. Whitaker, 275 S.W.2d 316, 319–320 (Mo.1955).

■ The evidence would have permitted the jury to find that the active participants in the burglary intended to use appellant's vehicle as the repository of the fruits of their endeavor. Appellant's claim of "mere presence" necessarily rests upon his explanation that he had no idea of what was going on. This assertion did not have to be accepted by the jury. The jury could have found from the evidence that appellant's vehicle was the only one parked in the vicinity, that the burglars ran directly to the auto with their loot and that appellant gave a false explanation for his presence. This evidence would permit a finding of something more than the "mere presence" found to have been shown in State v. Castaldi, 386 S.W.2d 392 (Mo. 1965), and State v. Whitaker, 275 S.W.2d 322 (Mo.1955), relied upon by appellant. Note that in State v. Whitaker, 275 S.W. 2d at 325, relied upon by appellant, in

which an accomplice was discharged, the court contrasted the situation in that case with another State v. Whitaker, 275 S.W. 2d 316 (Mo.1955), in which the conviction of the same accomplice was upheld, pointing out that, in the second case, " * * * there was no deception on [the accomplice's] part as to his knowledge of the burglary or as to the whereabouts [of the actual burglar]."

In State v. Farmer, 490 S.W.2d 72 (Mo. 1973), relied upon by appellant, a conviction was reversed where the only evidence of defendant's participation in a burglary was his presence, "passed out," in the rear seat of an auto in which a cash register stolen in the burglary was found. The court held that something more than the joint possession of the stolen property was required to tie the defendant to the burglary and stealing and found nothing more in that case. Here there was evidence in excess of simple joint possession, such as the proximity of appellant to the scene of the crime and the fact that the criminal activity was still in progress at the time of the arrest, as evidenced by the articles piled outside the door, obviously awaiting removal.

State v. Watson, 350 S.W.2d 763 (Mo. 1961), relied upon by appellant, is of doubtful value as authority (see State v. Cobb, 444 S.W.2d 408, 414 (Mo. banc 1969)), but in any event the facts of that case are far different from the present situation.

■ Appellant contends that, if his conviction is to rest on the possession of recently stolen property, the proof was lacking because the state did not offer into evidence any items found in his possession which were shown to have been recently stolen. The possession here involved was only one of several circumstances relied upon by the state. In any event, the evidence did show that meat products in the St. Vincent's food locker bore the St. Vincent's name, that the food locker had been forcibly entered and practically emptied, that the packages dropped by the other two men en route to appellant's auto bore the St. Vincent's name. Neither of the police officers testified directly that any of the packages found in appellant's auto bore the St. Vincent's name, but the circumstances would permit the jury to find that the packages they saw placed in the car were from the same source as those found in the street. The fact that the property was returned to the school does not disprove that it was stolen.

The state's evidence was sufficient to support the jury verdict of appellant's guilt.

■ Appellant contends that the trial court erred in admitting into evidence the hammer and flashlight which one of the two men who ran to appellant's auto dropped when the police turned their light on the auto. Appellant argues that these articles were not connected to him and therefore it was error to admit them into evidence. This argument overlooks the necessity that the state prove that a burglary had been committed by one or more of the persons with whom the state charged that appellant was acting. The articles were relevant to the proof of the commission of a burglary by the man who dropped the items and there was no necessity to connect appellant otherwise with these items. State v. Jordan, 235 S.W.2d 379, 382 [3] (Mo.1951).

Judgment affirmed.

All concur.