STATE of Missouri, Respondent,

v.

Barry T. McINTOSH, Appellant.

No. KCD 29019.

Missouri Court of Appeals,
Kansas City District.

Dec. 5, 1977.

J. Arnot Hill, Hill & Gamm, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P. J., SWOFFORD, C. J., and DIXON, J.

SWOFFORD, Chief Judge.

Following a jury trial the appellant (defendant) was convicted of Burglary in the Second Degree and Stealing and was sentenced to two (2) years on each charge, such sentences to run concurrently.

On this appeal the defendant seeks reversal upon only one point, namely, that the court erred in overruling his motion for a judgment of acquittal at the close of all the evidence for the reason that the evidence was insufficient to establish beyond a reasonable doubt that defendant was guilty of either burglary or stealing. The thrust of his argument in support of this point is that the state's evidence was based upon circumstantial evidence which was entirely consistent with his testimony demonstrating his innocence and showed nothing more than the fact that the defendant had an opportunity to commit the crimes.

It is the position of the state that in the light of all the surrounding circumstances shown in evidence, including the facts that he admitted driving to the scene of the crime, transporting an individual who actually physically executed the crime; transported the burglar and the loot away from the scene to a point where it was concealed in some bushes and thus was in physical possession of the stolen property; and, was later arrested en route back to the location where the loot was concealed—constituted sufficient factual basis to permit the jury to infer the defendant's guilt. Further, the state argues that the statement of the defendant, as a witness for the defense, that he lacked any knowledge of his companion's purpose or intent to commit a burglary and stealing, and that he, the defendant, had no intent to participate therein, in any capacity, still left to the jury the question of whether or not the defendant's version of his role was believable.

■ The positions of the parties hereto thus explicated requires that the evidence adduced at the trial be reviewed. In so doing, deference must be given to the rule that where a conviction has resulted, the evidence must be reviewed and the reasonable inferences to be drawn therefrom must be considered in the light most favorable to the state, and all evidence and inferences to the contrary must be disregarded. *State v. Franco*, 544 S.W.2d 533, 534 [1] (Mo. banc 1976). This principle applies whether the evidence, so reviewed, is circumstantial or direct in nature. *State v. Sallee*, 436 S.W.2d 246, 249 [1] (Mo.1969); *State v. Cobb*, 444 S.W.2d 408, 412 [1–3] (Mo. banc 1969).

On January 12, 1976, Harry A. Eib left his home at 8302 Pico in Kansas City, Jackson County, Missouri at 7:00 a. m. He left the house unoccupied, locked and had not given anyone permission to enter his home. Mr. Eib returned home at about 5:00 p. m. and found that the front door had been forced, his "things were scattered around" and his General Electric portable color TV set was missing. He called the police and upon the arrival of a police officer and check with headquarters, it was found that the missing TV (identified by serial number) was then in possession of the police.

To fill the void between 7:00 a. m. and 5:00 p. m. on the date of the burglary, the state offered the evidence of a Mrs. De-Coursey who had been visiting her mother, who lived in the vicinity of 79th and Charlotte. As she left her mother's home she observed a small red car with a black vinyl

top with a man in the car and another man "hiding" some objects in the bushes. The persons who resided at 7900 Charlotte notified the police at about 12:55 p. m. on that day that there were items of property in the bushes on the back of their lot. Upon investigation, the police found the TV set of Mr. Eib, a camera and case concealed in the bushes. The police also found a couple of hats and some incense across the street and a screwdriver at the edge of the road. A short time later, the police received a call that a black-over-red Mustang automobile had come by the bushes at 7900 Charlotte, stopped and the occupants had scrutinized the area. The observer had taken down the license number of the car and gave this information to the police and a pickup or investigation order was apparently broadcast for the car.

At 2:15 p. m. the defendant was arrested at 77th and Grand traveling in the automobile in question which was also occupied by one Daryl Gilyard, the registered owner of the car.

The defendant gave an oral statement to the police. This statement of defendant was introduced as direct evidence as part of the state's case through the testimony of Officer Cole. It was substantially the same as the defendant's testimony at the trial.

The defendant's version of the events of January 12, 1976 was that he had borrowed the Mustang automobile from his friend, Daryl Gilyard, the owner, in order to go to the Bendix plant on 94th Street, east of Troost, to seek employment. As he was driving south on Troost he was flagged down by one Robert Wilson who was a former schoolmate in high school. Wilson was carrying a shopping bag. Wilson asked the defendant to drive him to his destination and offered to pay him $5.00 for gasoline. Defendant agreed and Wilson got in the car and directed the defendant to go to a house at 83rd and Pico (Eib's residence). Upon arrival at that address Wilson left the car, asked defendant to wait, returned in a few minutes with the Eib TV set and placed it in the rear seat of the car.

The defendant's version of the following events was that Wilson admitted that he had stolen the TV; that this was the defendant's first knowledge of the burglary and theft; that he then insisted that Wilson get the set out of the car; that he drove Wilson to 79th Street between Charlotte and Campbell where Wilson hid the TV (and some other items he had with him) in the bushes; and, then proceeded to drive Wilson to 79th and Troost where he let him out of the car.

The defendant then picked up Daryl Gilyard, the owner of the car, and while they were driving back to the place where the "stuff" had been concealed in the bushes, they were stopped and arrested.

The police had been unable to locate Robert Wilson at the time of the trial, and the defendant denied any knowledge of his whereabouts.

When the state's case rests upon circumstantial evidence and the inferences to be drawn therefrom, a somewhat higher standard as to the burden of proof is required. It has been held that, as a general rule, such circumstances must be consistent with each other, consistent with the hypothesis of defendant's guilt, inconsistent with innocence, and point clearly and satisfactorily to his guilt so as to exclude every reasonable hypothesis of innocence. *State v. Sallee, supra,* at 249, 250 [1]; *State v. Kramer,* 534 S.W.2d 281, 283 [3] (Mo.App. 1976).

A corollary of this general rule, however, is that the burden upon the state in a circumstantial evidence case does not require that the facts, circumstances and inferences demonstrate the impossibility of innocence. The mere existence of another hypothesis is not enough to remove the case from the jury. *State v. Franco, supra,* at 534, 535 [3]. If a trial judge directed an acquittal whenever in his opinion the evidence failed to exclude every hypothesis other than that of guilt, he would preempt the functions of the jury.

An equally well-established rule in this state is that exclusive unexplained pos-

session of recently stolen property gives rise to a permissible inference of guilt and is sufficient proof to submit a burglary case to a jury. *State v. Sallee, supra*, at 250 [3]; *State v. Lang*, 536 S.W.2d 52, 54 [2] (Mo. App. 1976); *State v. Cobb, supra*, at 408, 414 [6–7], and cases cited therein.

■ The requirement under this rule that the possession be "exclusive" is satisfied where joint possession is shown provided there is something else shown by the evidence to connect the defendant with the offense. *State v. Brame*, 542 S.W.2d 591, 594 [2] (Mo.App. 1976); *State v. Pruett*, 522 S.W.2d 823, 824 [1, 2] (Mo.App. 1975). Presence at the scene and an opportunity to commit the crime, and presence as a passenger in the car used to transport the stolen goods, have been held to constitute evidence of joint and exclusive possession under the rule. *State v. Cobb, supra*, at 414 [7–10]. See also, *State v. Schleicher*, 458 S.W.2d 351, 353–354 [1–3] (Mo. banc 1970), where an effort by the defendant to aid in the disposition of the stolen property was considered a factor showing joint and exclusive possession. In *Schleicher*, the defendant was placed in proximity to the scene of the crime and was apprehended while a passenger in a car from which the stolen goods had been thrown during a high-speed chase. To like effect is *State v. Durham*, 367 S.W.2d 619 (Mo.1963), cert. den. 375 U.S. 861, 84 S.Ct. 130, 11 L.Ed.2d 89 (1963).

■ Furthermore, the requirement that the possession of the stolen goods be "unexplained" does not mean that the defendant proffers no explanation of his possession whatsoever. This principle simply means that the explanation of possession of recently stolen property is a question of fact peculiarly within the province of the jury and if the jury does not believe the explanation offered, the accused's possession stands as though "unexplained". *State v. Cobb, supra*; *State v. Durham, supra*; *State v. Kramer, supra*.

■ The appellant places great emphasis upon the fact that the evidence of the state and the testimony of the defendant are not inconsistent with that of the state and therefore, he was entitled to a directed verdict of acquittal. This position completely ignores the fact that the jury was at liberty to reject the self-serving portion of the defendant's statement as to his ignorance of the burglary and his lack of intentional participation therein. *State v. Sterling*, 534 S.W.2d 76, 79–80 [5] (Mo.App. 1976); *State v. Present*, 344 S.W.2d 9 (Mo.1961). As to this subjective lack of intent the defendant's credibility was directly in question and it was for the jury to believe or disbelieve his story. By its verdict the jury's determination was clear and unequivocal.

■ Having rejected the defendant's explanation of his innocence and unknowing connection with the crimes charged, the evidence conclusively established facts and circumstances and reasonable inferences to be drawn therefrom from which the jury could (and did) find that the defendant was an active coperpetrator along with Wilson in the burglary of Eib's home and the stealing of his TV set. See and compare: *State v. Mayfield*, 520 S.W.2d 680, 682 (Mo.App. 1975); *State v. McRae*, 533 S.W.2d 663, 665 (Mo.App. 1976); *State v. Jones*, 524 S.W.2d 186, 187 (Mo.App. 1975); and *State v. Johnson*, 510 S.W.2d 485, 489 (Mo.App. 1974).

The cases cited and relied upon by defendant have been carefully reviewed and are inapposite to the facts presented here and in no way weaken the firmly fixed principles herein relied upon.

The judgment is affirmed.

All concur.