STATE of Missouri, Respondent,

v.

Hurley WHITE, Appellant.

No. 51545.

Missouri Court of Appeals,
Eastern District,
Division One.

July 28, 1987.

Motion for Rehearing and/or Transfer
Denied Sept. 2, 1987.

Application to Transfer Denied
Oct. 13, 1987.

Dave Hemingway, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Presiding Judge.

Defendant Hurley Billy White was convicted by a jury of burglary first degree, § 569.160 RSMo. 1986, burglary second degree § 569.170 RSMo. 1986 and two counts of stealing under $150.00. § 570.030 RSMo. 1986. These charges grew out of two separate incidents. Defendant was sentenced to two concurrent terms of imprisonment of fifteen years on the burglary convictions and two concurrent terms of six months on the stealing convictions. Defendant appeals. We affirm.

The state's case is based upon circumstantial evidence. Defendant's sole contention on appeal is the state failed to make a submissible case. To resolve this issue, we view the circumstantial evidence and the inferences in the light most favorable to the verdict and disregard all contrary evidence and contrary inferences. *State v. Arnold*, 566 S.W.2d 185, 187 (Mo. banc 1978). We do not weigh the evidence but determine whether the evidence was sufficient for reasonable persons to have found defendant guilty as charged. *State v. Porter*, 640 S.W.2d 125, 126 (Mo.1982). The operative facts must be consistent with each other and with the defendant's guilt, and they must be inconsistent with his innocence and exclude any reasonable hypothesis of his innocence. *State v. Counts*, 671 S.W.2d 818, 819 (Mo.App.1984). The operative facts, however, need not be absolutely conclusive of guilt, and they need not demonstrate the impossibility of innocence; the mere existence of another possible hypothesis does not keep the case from consideration by the jury. *State v. Thomas*, 452 S.W.2d 160, 162 (Mo.1970).

The record shows that around 10:00 or 10:30 p.m., on July 18, 1985, one of the victims, Wijesooria Dayawansa, left his apartment, locked his apartment door, but left a window open with a locked screen in it. When Dayawansa returned, at approximately 2:00 a.m., he discovered the door and screen were open. His bicycle, television set, clock radio, telephone, camera and belt were missing. Dayawansa notified the police.

Shortly before midnight on the same evening, Bomi Mistry and Andjecko Basic, the other victims, were at their apartment in the same complex as Dayawansa's. Mistry heard a noise and went into his living room where he saw a black man holding the door. The man holding the door and anoth-

er man who was in the apartment both fled. Mistry called the police. Mistry saw the first police cars go by in "a very few minutes" after his call.

Police officer Paul Glickert received the burglary dispatch at 11:43 p.m. and, within a minute, drove to the area where he noticed a gold Cadillac with two people inside, driving through a parking lot. The Cadillac was being driven across the grass, over a curb, away from the marked exit of the parking lot. Glickert blocked the car and ordered the occupants out of the car. Defendant was the driver, and a Jerome Williams was the passenger. Glickert noticed both men were breathing very hard and sweating profusely. He also saw Dayawansa's missing items, along with a crowbar and two screwdrivers, in the back seat of the car. Subsequently Dayawansa identified the items taken from the back of the car as his.

Mistry was brought to the scene by Officer Hepler, who drove one of the police cars Mistry saw go by after his call. Mistry was unable to identify defendant or Williams. When Mistry and Basic returned to their apartment, they noticed a stereo, which had been on a bookshelf, was on the floor. Williams' fingerprints were found on the stereo.

Glickert questioned defendant about the burglary. Defendant told Glickert that, while he and Williams were driving, Williams asked him to stop in the parking lot. Defendant stated Williams left for approximately three minutes and he did not know where Williams went. Defendant said the property in the car belonged to Williams and it had been picked up at Williams' house earlier that evening.

■ Stripped to its essentials, the state's evidence showed: one of the victims, Mistry, interrupted two men committing a burglary in his apartment; shortly thereafter, a police officer received a burglary dispatch, proceeded to the apartment complex and spotted a car driving across a parking lot, about a block from the complex. Defendant was the driver, Jerome Williams a passenger, and the car had its lights off and was being driven across the grass,

over a curb, away from the marked parking lot exit. Defendant and Williams were sweating profusely and breathing very hard. The officer found Dayawansa's missing property in the back seat of defendant's car. In short, defendant was close to the scene of the burglaries, right after the burglaries were committed, driving a car with the lights turned off, across the grass and curb, and in joint possession of recently stolen property. These operative facts make a submissible case. E.g., *State v. Arnold*, 566 S.W.2d 185 (Mo. banc 1978); *State v. Cobb*, 444 S.W.2d 408 (Mo. banc 1969).

Defendant makes two basic arguments on appeal. The first is based upon Williams' explanation of the incident. Defendant called Williams as a witness. Williams testified he committed the burglaries without telling defendant, while defendant remained in the car. Williams told defendant the property he put in the car belonged to him. Williams was serving an 11 year sentence for the burglaries in question. The jury, obviously, chose to disbelieve Williams.

■ Defendant next argues the state's evidence merely shows defendant in proximity to the crime, shortly after it occurred and does not show defendant had possession of the stolen property. Defendant's argument is not unique. Basically, it is the same argument made by most other defendant's caught in the web of similar circumstantial evidence. In reference to specific challenges, our courts have stated and held that mere presence and an opportunity to commit the crime is not sufficient to make a submissible case. E.g., *State v. Allen*, 420 S.W.2d 330, 333 (Mo.1967). Also insufficient is the combination of presence at the scene and flight. E.g., *State v. Castaldi*, 386 S.W.2d 392, 395 (Mo.1965). Moreover, the inference of guilt raised by unexplained joint possession of stolen property is, by itself, insufficient. E.g., *State v. Farmer*, 490 S.W.2d 72, 74 (Mo.1973). Something more than this unexplained joint possession is needed; some affirmative participation must be shown for the burglary or theft. *Id.* at 75.

This litany, however, is directed to separate operative facts in isolation. In the

present case, there is a combination of presence at the scene of the crimes almost immediately after they occurred, an opportunity to commit the crime, flight—a sweaty, heavy breathing defendant driving a car without lights over the grass and curb— and joint possession of the stolen property, all in one continuous chain of events. This combination of circumstantial evidence is sufficient to support an inference of guilt strong enough to make a submissible case. *E.g. State v. Arnold, supra; State v. Cobb, supra.*

Proof of actual manual possession of the recently stolen property is not necessary to raise the inference of guilt, *see, e.g. State v. Conley,* 238 S.W. 804, 806 (Mo. 1922), and the joint possession need not be separated from possession by others. *State v. Cobb,* 444 S.W.2d at 412. Moreover, the requirement of "affirmative participation" in the crime by the defendant may be satisfied by inference, and the evidence need not directly place the defendant in the act of committing the crime for which he is charged. *State v. Arnold,* 566 S.W.2d at 187.

Judgment affirmed.

CRIST and KELLY, JJ., concur.